[No. 4806–II.   Division Two.   December 7, 1981.]

CHARLES C. STIDHAM, *Appellant*, v. THE DEPARTMENT OF LICENSING, ET AL, *Respondents.*

612

*Jerome L. Buzzard,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Scott C. Neilson* and *Donald L. Law, Assistants,* for respondents.

PETRIE, J.—Plaintiff, an attorney formerly employed by the state securities division, appeals a dismissal of claims for damages against the State and the director and assistant director of the Department of Licensing. His claims sounded in defamation and tortious interference with prospective advantage allegedly caused by actions of the two state officials. We conclude that the actions of the director and her assistant were privileged. Therefore, we affirm the dismissal of the claims.

This case is presented on a limited record as an appeal from a dismissal under CR 12(b)(6) for failure to state a claim. In reviewing the propriety of the trial court's ruling, we confine ourselves to the pleadings. *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975). In addition, we may examine a "hypothetical" statement of facts submitted by the parties. *Id.* If the "facts," their veracity aside, entitle the plaintiff to relief we must consider the complaint sufficient and reverse the dismissal. *Id.* The parties have stipulated that a prepared statement read by the Director of Licensing to the securities division staff would serve as "hypothetical" facts.

From the pleadings and prepared statement, we glean the following sequence of events. In 1979, Charles Stidham,

then an examiner and chief enforcement attorney for the state securities division, wrote a memorandum to the then director of the Department of Licensing, R. Y. Woodhouse. In that memorandum Stidham expressed concern that to date no permanent appointment had been made to the position of securities administrator, a division supervisory office within the Department of Licensing. Plaintiff was an applicant for the position. A few weeks later Director Woodhouse called a meeting of securities department personnel and delivered a prepared statement. In summary, she stated:

(1) In recent months she had received two pieces of correspondence and had been privy to remarks which necessitated this meeting. (2) It was clear from the statutes that the Director of Licensing was ultimately responsible for supervision of the securities division and she expected command relationships to be followed. (3) If the absence of a permanent securities administrator and oversight of the division by an assistant Director of Licensing was untenable, there were obvious options and alternatives available in other job settings. (4) The current "country club atmosphere" in the securities division would end. (5) The division's reputation was not as sterling as some purported, and some of the staff had been "playing games at state expense." (6) The "grousing and grumbling" about the way the division was being administered was totally inappropriate and in direct violation of department policy regarding legislative contact. (7) She would not tolerate staff impugnment of her personal and professional integrity. Nor would she tolerate having any department employee attempt to undercut management policies or any member of her executive staff.

Shortly after this meeting Assistant Director Duryea announced plaintiff would no longer serve as chief enforcement attorney for the division. Plaintiff's responsibilities were curtailed. Stidham voluntarily terminated his employment with the State, and this suit followed.

Essentially, plaintiff argues that it was apparent that

Director Woodhouse was making her "pointed" comments to him. Plaintiff claims he was defamed because defendants allegedly held him up to embarrassment, scorn and ridicule, thus damaging his personal and professional reputation. In a second count of his complaint plaintiff contends that as a result of defendants' statements and conduct he suffered severe and permanent damage to his professional reputation. He argues this amounted to defendants' tortious interference with his expectation of increased remuneration in both the public and private sectors.

Initially, we address the defamation allegation. A defense of absolute privilege will defeat a claim for defamation. W. Prosser, *Torts* § 114 (4th ed. 1971). The issue of government privilege was addressed in *Gold Seal Chinchillas, Inc. v. State*, 69 Wn.2d 828, 420 P.2d 698 (1966). The plaintiff therein, an association of breeders, brought suit against the State and the Attorney General for publication of allegedly defamatory statements in a press release. The release summarized the State's investigation and prosecution of Consumer Protection Act violations by the association. In affirming a dismissal for failure to state a claim upon which relief could be granted, the court stated:

> The allegedly libelous publication or oral pronouncement must have some relation to the general matters committed by law to the control or supervision of the particular state official. As long as the acts complained of have more than a tenuous relation to their official capacity, state officials, acting through the members of their staffs, are absolutely privileged with respect to the content of their oral pronouncements or written publications.

(Citation omitted.) *Gold Seal Chinchillas, Inc.*, 69 Wn.2d at 834.

■ We find *Gold Seal Chinchillas* dispositive. The Attorney General, by informing the public of pending consumer protection litigation, acted within the scope of his statutory duties. Similarly, we find the director's admonishment of her staff about inappropriate office behavior is within her broad statutory authority to supervise members

of the department. RCW 43.24.010, .020. *See* 63 Am. Jur. 2d *Public Officers and Employees* § 265 (1972). A supervisor's evaluation of her subordinate's performance may be absolutely privileged. *Cripe v. Board of Regents,* 358 So. 2d 244 (Fla. Dist. Ct. App. 1978); *see also Savarese v. United States Dep't of Health, Educ. & Welfare,* 479 F. Supp. 304 (N.D. Ga. 1979), *aff'd sub nom. Savarese v. Harris,* 620 F.2d 298 (5th Cir. 1980). Additionally, we conclude Assistant Director Duryea's announcement that plaintiff would no longer serve as chief enforcement attorney was within her statutory authority and is absolutely privileged. *See* RCW 43.24.010.

■ Plaintiff argues that if given the opportunity he could prove that defendants acted willfully and maliciously. Defendants' actions were absolutely privileged; defendants' motives, whatever they may be, are of no consequence. 1 F. Harper & F. James, *Torts* § 5.21 (1956).

We turn next to plaintiff's claim that defendants' actions interfered with his prospective advantage. This allegation is twofold. First, Stidham complains that defendants' conduct interfered with his present and future ability to function as a state securities lawyer.[1] Second, defendants' conduct allegedly impeded plaintiff's ability to practice securities law in the private sector at some time in the future.

■ Arguably, the claim of tortious interference with prospective advantage is not truly distinct from a claim of defamation. Certainly, the roots of the former are founded in the latter. When, as here, both claims arise out of the same conduct, it could be said that the tort of interference with prospective advantage simply provides a method of measuring damages sustained by the party defamed. Nevertheless, we do not limit plaintiff's pleadings to a claim for

---

[1]It is the established law in this state that a defendant cannot be held liable for tortiously interfering with a contract to which he is a party. *Hein v. Chrysler Corp.,* 45 Wn.2d 586, 277 P.2d 708 (1954); *Olson v. Scholes,* 17 Wn. App. 383, 563 P.2d 1275 (1977). Regardless of our resolution of this issue on grounds of privilege this portion of plaintiff's claim for interference with his present and future employment with the state cannot stand.

defamation; *see Dubourcq v. Brouwer,* 124 N.Y.S.2d 61, *aff'd,* 282 App. Div. 861, 124 N.Y.S.2d 842 (1953), but find that both claims are subject to the defense of privilege. *See Moloney v. Tribune Publishing Co.,* 26 Wn. App. 357, 613 P.2d 1179 (1980) (holding that privilege defense to defamation also applicable to claim for tort of outrage).

There is a common policy underlying privilege as a defense *to either of these claims.* Courts allow privilege to invade a plaintiff's interest in furtherance of a social interest of greater public import. *Cf.* 1 F. Harper & F. James § 6.12; Restatement (Second) of Torts § 767 (1979), and W. Prosser § 114. The rationale for affording absolute privilege to the acts of government officials has been summarized as follows:

> The reasons for the recognition of the privilege have been often stated. It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Matteo,* 360 U.S. 564, 571, 3 L. Ed. 2d 1434, 79 S. Ct. 1335 (1959).

The director and assistant director must be afforded significant latitude to effectively supervise a state agency. We find their actions were sufficiently related to their statutory authority to warrant a defense of absolute privilege. Plaintiff's claims for defamation and interference with prospective advantage were properly dismissed.

Judgment affirmed.

REED, C.J., and PEARSON, J., concur.