**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**AUGUST 18, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KARISSA FEYEN, on behalf of herself and all others similarly situated, | ) ) ) | No. 38346-6-III |
| Appellant, | ) ) | PUBLISHED OPINION |
| v. | ) ) | |
| SPOKANE TEACHERS CREDIT UNION, | ) ) | |
| Respondent | | |

FEARING, J. — Karissa Feyen appeals the dismissal of her complaint for failing to

plead a cause of action. Her complaint alleges that her credit union, Spokane Teachers

Credit Union (STCU or the credit union), engaged in an unfair or deceptive act or

practice when imposing overdraft user fees on use of her debit card. Because misleading

and ambiguous language in STCU's documents could sustain Feyen's causes of action,

we reverse dismissal of Feyen's complaint. The language renders even the best of

lawyers dizzy when reading.

## FACTS

Because the trial court dismissed this action pursuant to CR 12(b)(6), we glean the

facts from Karissa Feyen's amended complaint. STCU is one of the largest credit unions

in Washington State, with branches throughout the state and with assets exceeding $3

billion. Feyen, a member of STCU, complains that the credit union imposed overdraft

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

fees on her despite her not overdrawing her account. She further finds fault with confusing and unfair language in the credit union's membership account documents. Feyen focuses on overdraft fees imposed as a result of debit card transactions.

STCU foists on each member at least three distinct documents that control the relationship between the member and the credit union: a membership and account agreement (membership agreement), a privilege pay agreement, and an overdraft disclosure. STCU does not explain why it needs three separate documents to govern its compact with members. Karissa Feyen attaches all three agreements to the amended complaint. STCU drafted the documents and retains the right to change the language in the documents whenever convenient for it. We quote relevant provisions from all three governing documents. When quoting the pertinent language, we also parse the prose in an attempt to understand it.

Section 12(a) of the membership agreement, which section is entitled "Your Overdraft Liability," explains that STCU's payment on a transaction, which payment causes a negative available balance in a credit union member's account, causes an overdraft. The section also explains when the credit union deems the member to hold a negative available balance:

> If on any day the *available funds* in your checking account are not sufficient to cover checks *and other items* posted to your account, those checks and items will be handled in accordance with our overdraft procedures and the terms of this Agreement. The Credit Union's determination of an *insufficient balance* is made at *the time the check or*

2

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

> *item is presented to us* [*the credit union*]*, which may be later than the time you conduct your transaction.* The Credit Union processes checks and items as follows: (i) checks are paid based upon the number of the check with the lowest numbered check paid first, (ii) for ACH [Automated Clearing House] items, credits are processed first and ACH debits processed second with the lowest items paid first, and (iii) *debit card transactions are paid in the chronological order they are received.* The Credit Union has no duty to notify you of a check or item that will overdraw your account. *If we pay an item that overdraws your account, you are liable for and agree to pay the overdraft amount and any fees immediately.* You will be subject to a charge for the item whether paid or returned as set forth in the Rate and Fee Schedule. We reserve the right to pursue collection of previously dishonored items at any time, including giving a payer bank extra time beyond any midnight deadline limits.

Clerk's Papers (CP) at 44-45 (emphases added). The second sentence of this section references determination of the account balance when an "item is presented to us." We assume an "item" includes a debit card transaction, although the membership agreement does not define the word. The third sentence reads that the credit union pays debit card transactions "in the chronological order they are received." The section does not inform the member whether the act and timing of an item being presented is the same as the act and timing of the credit union first receiving notice of the debit card transaction. The sentence states that the "time the . . . item is presented to us" "may be later" than the transaction. Since this time may be later, conceivably the time "may" also be the time of the transaction.

The overdraft disclosure defines "available balance":

> Your *available balance* is the money in your account *after deducting all outstanding debits*, ATM [automated teller machine] withdrawals, and

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

> other pending electronic charges. It does not include outstanding checks, online bill payments, or pre-authorized debits such as health club dues or auto insurance premiums.
> *Available balance* is a gauge of how much money is in your account at any moment in time. It can fluctuate throughout the day as debit card purchases, direct deposits, transfers, and so on are posted to your account.

CP at 38 (emphases added). Note that Section 12(a) of the membership agreement, quoted on the previous page, utilizes the term "available funds." The overdraft disclosure employs the phrase "available balance." The documents do not divulge whether STCU intended the two expressions to be synonymous. A transactional attorney learns at a fresh age to employ the same word or phrase throughout all governing documents when conveying the same concept, and the attorney shreds his or her thesaurus in order to thwart confusion in the reader.

We assume that a debit charge falls within the classification of "outstanding debits," "pending electronic charges," or both as written in the overdraft disclosure. Later in this second governing document, the disclosure declares that "an overdraft can occur at any hour that your 'available balance' drops below zero." CP at 37.

The overdraft disclosure elucidates that a credit union member may experience an overdraft, despite having a positive balance:

> Yes, it's possible to overdraft even when your account seems to have enough to cover the charge. That's because merchants—not STCU—control the timing of when *debits are settled*, so it is possible to overdraft by mistake when a merchant waits to settle your debit transaction.
> For example, if you bought $200 in groceries Saturday with your debit card, but the supermarket did not collect the money from your

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

> account until Tuesday, your available balance would appear to be $200
> higher than the money you actually have to spend. During that time, you
> could overspend and experience an overdraft.

CP at 38 (emphasis added). The phrase "debits are settled" returns us to language in section 12(a) of the membership agreement. The second sentence of section 12(a) mentions the determination of the account balance when an "item is presented to us." CP at 44. The third sentence of section 12(a) reads that the credit union pays debit card transactions "in the chronological order they are received." CP at 45. We do not know whether "the timing of when debits are settled" is synonymous with "the time the . . . item is presented to us," "in the chronological order they are received," or both. CP at 45.

According to STCU's third document, the privilege pay agreement, the credit union authorizes and pays overdrafts at its discretion. If STCU does "not authorize and pay an overdraft, [the] transaction will be declined." CP at 40. If the credit union authorizes and pays an overdraft, it charges the credit union member an overdraft fee of $29.

According to the amended complaint of Karissa Feyen, debit card transactions occur in two steps. The first step transpires when a credit union member swipes his or her debit card when making a purchase. Following a swipe, the merchant's card reader transmits a request for preauthorization from STCU. Step one is completed if STCU preauthorizes the transaction. The credit union then immediately reduces the member's

5

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

checking account for the amount of the purchase. Stated differently, STCU sets aside

funds in the member's account to cover that transaction. The member's displayed

"available balance" reflects the subtracted amount. Nevertheless, despite this sequester at

the time of sufficient funds, the member may need to pay an overdraft fee on that

purchase. Feyen labels this practice as "Authorize Positive, Purportedly Settle Negative

Transactions." CP at 24. Despite STCU withholding a specific sum from the account to

pay for a debit transaction and the account having sufficient funds, the member can be

charged an overdraft fee.

When STCU sequesters the funds from the member's account, the credit union

does not immediately wire the funds to the merchant. During the second and later step,

STCU actually transfers the authorized funds to the merchant. This latter step, referred to

as settlement, may occur up to three days after STCU preauthorized the transaction.

Other transactions may take place between steps one and two, further reducing a credit

union member's available account balance. But STCU still charges an overdraft fee on

the initial transaction, for which it segregated funds, even if, at the time of the

transaction, sufficient funds lay in the account. Karissa Feyen asserts that the account

documents fail to warn the members that a fee will also be assessed on the initial

transaction.

In her amended complaint, Karissa Feyen quotes a portion of the Consumer

Financial Protection Bureau, Winter 2015 "Supervisory Highlights," to show that the

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*


federal government deems STCU's practice unfair and deceptive.

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

CP at 25-26. Feyen alleges that STCU engages in transactions described in this

Consumer Financial Protection Bureau document.

7

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

The membership agreement includes a provision on attorney fees.  It provides that credit union members are liable:

> for any liability, loss, or expense as provided in this Agreement and that the Credit Union incurs as a result of any dispute involving your accounts or services. . . .  In the event either party brings a legal action to enforce the Agreement or collect any overdrawn funds on accounts accessed under this Agreement, the prevailing party shall be entitled, (subject to applicable law), to payment by the other party of its reasonable attorney's fees and costs, including fees on any appeal, bankruptcy proceedings, and any post judgment collection actions, if applicable.

CP at 48.

According to her amended complaint, Karissa Feyen maintains a personal checking account with STCU.  Feyen uses a debit card to make purchases that deduct from her checking account.  On many occasions, including on May 24, 2020, STCU charged Karissa Feyen overdraft fees on debit card transactions settled on that day despite isolating funds in her account to pay for the transactions.

Karissa Feyen characterizes the overdraft fees as an unfair and unlawful assessment on transactions that did not overdraw checking accounts.  The language in the account documents misleads members about the true nature of STCU's practices.  By the imposition of the fees, STCU reaps millions of dollars.

> These fees are, by definition, most often assessed on consumers struggling to make ends meet with minimal funds in their accounts.  These practices work to catch accountholders in an increasingly devastating cycle of fees.

CP at 20.

8

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*


PROCEDURE

Karissa Feyen alleges causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and unfair and deceptive acts in violation of the Consumer Protection Act (CPA) RCW 19.86.  In the amended complaint, Karissa Feyen seeks certification of a plaintiffs' class.  Neither party has filed a motion to certify a class.

STCU moved the trial court to dismiss Karissa Feyen's complaint under CR 12(b)(6) for failure to state a claim on which the court could grant relief.  The trial court granted the credit union's motion to dismiss.

During oral argument before this court, STCU's counsel presented a hypothetical situation in order to explain how the credit union's overdraft rules work.  We label the hypothetical the breakfast charges scenario.  The example explains the significance of the difference between the member's actual balance and available balance.  According to this hypothetical, the member starts the day with an actual and available $10 balance.  The member visits Starbucks and buys an $8 latte with her debit card.  Her STCU available balance is now $2.00 and her actual balance is $10.00.  The member next visits McDonald's for breakfast and purchases an Egg McMuffin for $2.79 and hash browns for $1.00, for a total of $3.79.  Again, the member pays with her debit card.  The member now still retains an actual balance of $10.00.  But her available balance decreased to a negative $1.79.  Assuming McDonald's settles its transaction first with STCU, the member overdrafts.  STCU assesses a $29.00 overdraft fee, and the member's available

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

balance tumbles further to negative $30.79. Counsel's hypothetical did not disclose the amount of the actual balance at this moment in time. Regardless, a day later, Starbucks settles its transaction. Because of the negative balance, STCU charges another overdraft fee to the member. The member's available balance plummets to negative $67.79. Thus, the member pays two overdraft fees despite her account having sufficient funds to pay for the latte at the time of its purchase.

## LAW AND ANALYSIS

Washington liberal pleadings rules compel our reversal of the superior court's grant of STCU's motion to dismiss. The credit union's motion falls under CR 12(b)(6), which reads in pertinent part:

> [T]he following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted.

We review some familiar and some unfamiliar principles controlling a motion to dismiss. We review de novo a trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6). *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). The superior court and this court grant such motions sparingly, with care, and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief. *Tenore v. AT&T Wireless Services*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998).

10

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

Courts should dismiss a complaint under CR 12(b)(6) only when it appears beyond a reasonable doubt that no facts justifying recovery exist. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Courts presume the allegations of the complaint to be true for the purpose of such a motion. *Berst v. Snohomish County*, 114 Wn. App. 245, 251, 57 P.3d 273 (2002). We examine the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint, which would entitle the claimant to relief. *North Coast Enterprises, Inc. v. Factoria Partnership*, 94 Wn. App. 855, 859, 974 P.2d 1257 (1999). We must also accept any reasonable inferences from the facts alleged as true. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). This court may consider any factual scenario under which the plaintiff might have a valid claim, including facts asserted for the first time on appeal. *North Coast Enterprises, Inc. v. Factoria Partnership*, 94 Wn. App. 855, 859 (1999).

When a complaint alleges the contents of documents and does not attach them to the complaint, a court may consider those documents as well. *Davidson v. Glenny*, 14 Wn. App. 2d 370, 374-75, 470 P.3d 549 (2020). Karissa Feyen not only attached the STCU contract documents, but also quoted relevant portions of the documents in her complaint. We need not deem the complaint's legal conclusions as true. *Jackson v. Quality Loan Services Corp.*, 186 Wn. App. 838, 843-44, 347 P.3d 487 (2015).

This may be the first decision wherein the reviewing court relies on a hypothetical presented by the party moving for dismissal rather than the defending party. We

11

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

particularly rely on the hypothetical that STCU counsel presented to this court during oral argument. We deem the hypothetical antithetical to the credit union's motion to dismiss. We would have thought before argument that, under the breakfast charges scenario, the member would pay an overdraft fee on one of the debits, but not both. The account documents do not expressly warn the member that she may incur overdraft fees on both purchases. The language is deceptive. Because of the varying, undefined, and esoteric words used in the documents, a reasonable consumer could be confused. The documents nowhere send clear notice of being required to pay an overdraft fee on a transaction for which the credit union segregates funds from the account when those funds are sufficient to retire the debit card debt. One could readily believe that, assuming STCU separates the funds for the Starbucks purchase, the credit union should at least apply those funds to prevent the paying of a second overdraft fee on that transaction after the member pays an overdraft fee on the intermediate McDonald's transaction that settles first.

We have formulated another hypothetical that confirms our conclusion that Karissa Feyen's complaint states a cause of action. Say a credit union member has $10 in his or her account on Monday morning. The member purchases a $6 coffee that morning with his or her debit card. The transaction is authorized and the member's available balance is reduced to $4. Later that same day, the member writes a check for $7. The next morning, the $7 check is presented for payment and the credit union pays the check,

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

reducing the available balance into overdraft negative $3. On Wednesday, the $6 coffee debit is presented for payment against a negative $3 available balance.

At this point, under our own hypothetical, the credit union could process the coffee transaction in two ways. Feyen alleges that the contract requires STCU to determine the sufficiency of funds at the time of authorization. Since there were sufficient funds when the $6 coffee was authorized, and those funds were deducted from the available balance, those sequestered funds should be kept separate and applied directly to the charge when it is later presented regardless of the available balance at the time of presentment.

The credit union argues that the contract clearly states that the sufficiency of funds is determined at the time of presentment, not authorization, and items are paid from the available balance. Under this scenario, when the $6 debit charge is presented for payment, the $6 hold is released back into the account bringing the available balance to $3. But when the $6 charge is then applied to that balance, it creates another overdraft. Under the credit union's process, the two charges create two overdrafts and two overdraft fees even though the credit union member possessed sufficient funds in the account to cover one of the two charges.

We need not discuss contract law to bolster our decision. An implied duty of good faith and fair dealing inheres in every contract. *Badgett v. Security State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). This duty obligates the parties to cooperate with

13

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

each other so that each may obtain the full benefit of performance. *Badgett v. Security State Bank*, 116 Wn.2d 563, 569 (1991). The covenant requires the parties to perform in good faith the obligations imposed by their agreement. *Badgett v. Security State Bank*, 116 Wn.2d at 569. Karissa Feyen sufficiently pleads causes of action for breach of contract and violation of the implied duty of good faith.

To succeed in a private CPA action, a party must establish the following elements: (1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). An unfair or deceptive act or practice need not be intended to deceive. The practice need only have the capacity to deceive a substantial portion of the public. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 74-75, 170 P.3d 10 (2007); *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wn.2d 778, 785 (1986). The CPA "affords a right to recover damages independent of underlying contract rights." *Keyes v. Bollinger*, 31 Wn. App. 286, 293, 640 P.2d 1077 (1982).

The facts pled by Karissa Feyen can sustain a finding in her favor as to all elements of a CPA claim. The credit union does not dispute that its acts occur in trade or commerce or that the acts can impact the public interest. Feyen alleges that STCU imposes its deceptive contract language on hundreds, if not thousands of consumers.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38346-6-III
*Feyen v. Spokane Teachers Credit Union*

Attorney Fees

Karissa Feyen requests attorney fees on appeal under RCW 19.86.090, which statute authorizes the trial court to award the prevailing party reasonable attorney fees. Alternatively, Feyen asks this court to instruct the trial court to award fees on remand pursuant to RAP 18.1. We deny the request because Feyen has yet to prevail on her CPA claim. We remand to the superior court only for further proceedings.

STCU seeks attorney fees on appeal pursuant to RCW 4.84.330 and the language in the membership agreement. Because we reverse the superior court, we also deny STCU recovery of fees.

CONCLUSION

We reverse the superior court's dismissal of Karissa Feyen's amended complaint. We remand for further proceedings consistent with this opinion.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

15