[No. 4935–1.   Division One.   April 3, 1978.]

PAUL SNYDER, ET AL, *Appellants,* v. THE STATE OF
WASHINGTON, ET AL, *Respondents.*

*Richard B. Sanders,* for appellants.

*Slade Gorton, Attorney General, Donald L. Law, Assistant, Christopher T. Bayley, Prosecuting Attorney,* and *Thomas H. Wolfendale, Deputy,* for respondents.

WILLIAMS, J.—Paul and Nell Snyder brought this action against the State of Washington, King County, and M. K. Deacon and husband, for damages for tortious interference with their relationship with their minor daughter, Cynthia. The Snyders appeal from a partial summary judgment granted in favor of the defendants.

Considering the evidence most favorable to the nonmoving party, the facts are as follows: On June 18, 1973, Mr. Snyder took 15-year-old Cynthia to the Youth Services Center of the Juvenile Department of King County Superior Court. For some time, Cynthia had rebelled against her parents' restrictions on her smoking, dating, and other activities, and Mr. and Mrs. Snyder hoped that the juvenile court commissioner would "resolve the family dispute by admonishing Cyndy regarding her responsibilities to her parents." Cynthia was placed in a receiving home. A month later, Cynthia, with the help of caseworkers of the Department of Social and Health Services, filed a petition alleging that she was a dependent child as defined by RCW 13.04.010(2) and (3), which provide:

> For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

. . .

(2) Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or

(3) Whose home by reason of neglect, cruelty or depravity of his parents or either of them, or on the part of his guardian, or on the part of the person in whose custody or care he may be, or for any other reason, is an unfit place for such child; . . .

On July 23, Cynthia was placed in the temporary custody of the Department of Social and Health Services, and an attorney was appointed as her guardian ad litem. At a hearing on October 12, the juvenile court found no parental unfitness under the statute and ordered Cynthia to be returned to her parents' custody, where she remained until November 16. On that date, after more confrontations at home, she went to Youth Advocates, a group which assists troubled juveniles. There, she was directed to the Youth Services Center. On November 21, at the center, with the help of a juvenile court employee, Cynthia filed a second petition, this time alleging that she was incorrigible as defined in RCW 13.04.010(7), which provides:

For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

. . .

(7) Who is incorrigible; that is, who is beyond the control and power of his parents, guardian, or custodian by reason of the conduct or nature of said child; . . .

At a hearing conducted 3 weeks later, the court found Cynthia to be incorrigible and, after a 1-week continuance, ordered that she be placed in a foster home under the continuing jurisdiction of the juvenile court. Mr. and Mrs. Snyder filed a motion for revision of the order, which was denied by the Superior Court in August 1974. On appeal, the Supreme Court affirmed the juvenile court's determination that Cynthia was incorrigible. *In re Snyder,* 85 Wn.2d 182, 532 P.2d 278 (1975); *see also* 76 B.Y.U. L. Rev. 659 (1976).

In this case, the Snyders' specific allegations of tortious acts are found in Mrs. Snyder's affidavit and Mr. Snyder's deposition, as follows: When Mr. Snyder took Cynthia to juvenile court on June 18, an "intake worker," Tom Wright, told him that Cynthia would be placed in 72–hour detention. When Mr. Snyder told Wright that he didn't want Cynthia "placed" anywhere and that he wanted to take her home, Wright refused the request and told him that because Cynthia did not want to go home, Snyder had no choice in the matter. Cynthia remained for over a month in a receiving home, the location of which was kept secret from the Snyders, who made repeated demands for their daughter's return. Employees of the juvenile court and the Department of Social and Health Services advised Cynthia not to return home, encouraged her to file the dependency petitions, and failed to provide counseling for her or urge her to attempt a reconciliation with her parents.

The Snyders state their complaint as follows:

> 4. *Interference with Family and Damages.* On or about the 18th day of June, 1973, and thereafter, King County, the State of Washington and Mrs. M. K. Deacon, on behalf of herself, her marital community and other defendants, did wrongfully deprive Mr. and Mrs. Paul Snyder of the custody of their daughter, Cynthia Nell. Thereafter, said defendants failed to use due diligence to return Cynthia to the home of her parents and to carry out their responsibilities in that regard pursuant to the law of this state. By commission and omission said defendants did alienate the affections of Cynthia Nell for her parents and family and damaged the inner relationships of the Snyder family permanently and in the extreme. As a direct and proximate result of the aforementioned, the plaintiffs herein have sustained pain and suffering as well as mental and emotional anguish in the extreme and will continue to experience same for the remainder of their lives.

In its order granting partial summary judgment, the court dismissed the Snyders' complaint as to the "causes of action" for wrongful deprivation of custody and failure to use due diligence in reuniting the Snyder family, but

refused to dismiss the "cause of action" for alienation of affections, although limiting damages therefor to the period of Cynthia's minority. The trial court made an express determination that there was no reason to delay the review of the judgment and expressly directed the entry of the order, intending it to be a final judgment from which an appeal would lie. CR 54(b).

█ The partial judgment is not an appealable order because the complaint and supporting affidavits present but a single claim: wrongful interference with the family relationship. *See Strode v. Gleason*, 9 Wn. App. 13, 510 P.2d 250, 60 A.L.R.3d 924 (1973); *Daily v. Parker*, 152 F.2d 174, 162 A.L.R. 819 (7th Cir. 1945). The wrongful interference is alleged to have been done in three ways: (1) deprivation of custody; (2) failure to exercise due diligence in returning custody; and (3) alienation of affections. Those three separate legal theories based upon one set of facts, constitute one "claim for relief" under CR 54(b).

In *Doerflinger v. New York Life Ins. Co.*, 88 Wn.2d 878, 567 P.2d 230 (1977), the Supreme Court held that a single claim for relief, on one set of facts, is not converted into multiple claims, for purposes of CR 54(b), by the assertion of various legal theories in support of recovery. The plaintiffs in that case brought an action for damages against an insurance company for failure to pay an insurance claim; the complaint alleged breach of contract, breach of fiduciary duty to act in good faith, outrage, negligent infliction of emotional distress, and intentional infliction of emotional distress. The trial court dismissed all theories of relief except breach of contract and outrage. The Supreme Court dismissed the appeal and remanded the cause because "the separate legal theories presented by appellants are not multiple claims and thus are not subject to the entry of final judgment upon dismissal by the trial court." *Doerflinger v. New York Life Ins. Co., supra* at 882.

The orderly administration of justice requires that the trial court, after having full opportunity to hear, consider,

and decide all material questions of the case, will enter formal judgment resolving those questions. In managing the litigation, the trial court must have wide discretion and authority, including the power to issue interlocutory orders, upon every aspect of the case. These orders or rulings may be changed, modified, revised, or eliminated as the case progresses. The court's final say on the merits is subject to revision at any time before final judgment. *Owens v. Kuro,* 56 Wn.2d 564, 354 P.2d 696 (1960).

This case is a good example of why appeals may not be brought piecemeal, unless clearly authorized by law. The action has been neither determined nor discontinued; the stage for final judgment has not been reached. At trial, the court may change its order, admit evidence as to deprivation and due diligence, and, upon reflection, instruct the jury on damages without the limitation of Cynthia's 18th birthday.

From the standpoint of an appellate court, this quotation from *Doerflinger* at pages 882–83 is also apt:

> The consideration by this court of the theories of recovery propounded by appellants and the measure of damages urged would have a far–reaching impact on the law of this state. To lay down general principles of law as requested by the parties in this case without having the entire matter before us, including all of the essential facts and testimony, would require this court to act in a vacuum.

*Doerflinger* further holds that the court's express determination that "there is no just reason for delay" (CR 54(b)), in the order dismissing some of the theories, does not automatically permit appeal. The power conferred upon the trial court by CR 54(b) should be used only "in the infrequent harsh case" as an instrument for the improved administration of justice. *Panichella v. Pennsylvania R.R.,* 252 F.2d 452, 455 (3d Cir. 1958). There must be "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Campbell v. Westmoreland Farm, Inc.,* 403 F.2d 939, 942 (2d Cir. 1968).

There is nothing of the sort in this case. The Snyders will not be subjected to injury by awaiting the final outcome of the litigation. *Gazin v. Hieber,* 8 Wn. App. 104, 504 P.2d 1178 (1972).

█ Another question raised is whether the trial court violated its local rule 7 by allowing a summary judgment motion to be presented and considered by two different Superior Court judges. Where the issue is the interpretation of a local rule by the trial court, that court is the best exponent of its own rules, and their use will not be disturbed by an appellate court unless the construction placed thereon is clearly wrong or an injustice has been done. *Burton v. Gilder,* 106 Ga. App. 494, 127 S.E.2d 328 (1962); *United States Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464 (4th Cir. 1964).

Moreover, a superior court may, for good reason, relax and suspend its own special rules of procedure, *Washington Bank v. Horn,* 24 Wash. 299, 64 P. 534 (1901); observation of local rules is largely discretionary in the trial court. *State v. Barton,* 5 Wn.2d 234, 105 P.2d 63 (1940); *Sylvester v. Olson,* 63 Wash. 285, 115 P. 175 (1911). Rules of court are but expedients to further the transaction of the business of the court, and departures therefrom are not reviewable unless the departure has operated to the injury of the complaining party. *Spokane Sav. & Loan Soc'y v. Liliopoulos,* 160 Wash. 71, 294 P. 561 (1930). This court will presume that the Superior Court disregarded the rule (if it did) for sufficient cause. *Connell v. Higgins,* 170 Cal. 541, 150 P. 769 (1915). The record does not show that the court was clearly wrong or that an injustice has been done.

Appeal dismissed.

FARRIS, C.J., and DORE, J., concur.