## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46717-8-II |
| Respondent, | |
| v. | |
| RAUL BENICIO CASTILLO-LOPEZ, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Raul Castillo-Lopez appeals his convictions for five counts of rape of a child in the second degree.[1] He moved to substitute his court appointed attorney with a retained attorney and for a continuance of the trial date. He argues the trial court abused its discretion when it denied his motion to continue the trial because it prevented retained counsel from substituting. We affirm.

### FACTS

T.S.'s mother, Kelly Castillo-Lopez,[2] is married to Castillo-Lopez. The State, by amended information, charged Castillo-Lopez with five counts of rape of a child in the second degree, alleging he engaged in sexual intercourse with T.S. on five separate occasions between January 2012 and February 2013. T.S. turned 12 years old in 2012. The court set the case for trial on July 7, 2014.

---

[1] RCW 9A.44.076.

[2] To avoid confusion, we will refer to Kelly by first name in this opinion. We intend no disrespect.

On June 19, 2014, the court heard Castillo-Lopez's motions for substitution of counsel and for a continuance of the trial date. Castillo-Lopez moved to substitute his appointed counsel, Samuel Groberg, with hired counsel, Samuel Marsh. Castillo-Lopez argued the case should be continued because Marsh needed time to prepare and the parties were still awaiting DNA evidence. The trial court ruled it would grant the substitution provided counsel would be prepared to go to trial on the date set. The trial court denied the continuance. Marsh then admitted to the court he was unavailable on the trial date. The court again declined to grant the continuance, and Marsh responded, "don't grant the substitution, Your Honor." Report of Proceedings (RP) (June 19, 2014) at 6.

In denying the continuance, the trial court referenced "a statute that says [the court has] to consider also the impact of this on the child. Since this is rape of a child 2, that means under the age that – we have to consider that, don't we?" RP (June 19, 2014) at 4. The State noted that the trial court would "have to find substantial and compelling reasons" to continue the case, and stated that the victim and the State would "definitely want the DNA results back before trial." RP (June 19, 2014) at 4. However, the trial court determined that the DNA analyst being on maternity leave did not constitute a substantial and compelling reason to continue the case and denied the motion for a continuance.

On July 3, a different judge presided over a trial confirmation hearing. The trial court heard new defense motions to substitute Marsh for Groberg and to continue the trial based on the substitution of counsel. The parties had obtained the DNA evidence at the time of these motions. The trial court again denied the motion for a continuance: "When somebody comes in and says I'll substitute in provided I can get a continuance, we don't do that." RP (July 3, 2014) at 4. The trial court made it clear that it would allow the substitution, but would not grant the continuance:

Mr. Cas[t]illo-Lopez as far as I'm concerned is entitled to counsel of his own choosing. If he wants to have you here Mr. Marsh, again, as far as I'm concerned, Mr. Marsh can be hired, but I'm not conditioning that on a continuance of the trial date which is set for next week.

RP (July 3, 2014) at 5. Additionally, the trial court stated:

If Mr. Castillo-Lopez and/or his family wants to hire Mr. Marsh . . . that's his prerogative. I'm not going to do anything to interfere with that. . . . [M]y understanding from what I've been told is that Mr. Marsh's proposed appearance was conditioned on the idea that he would get a continuance of the trial date, which I'm not granting.

RP (July 3, 2014) at 10. Castillo-Lopez indicated to Groberg that he did not want a continuance.

The matter proceeded to trial and T.S. testified as follows. Before her twelfth birthday, Castillo-Lopez began putting his hand on her inner thigh and touching her vagina under her clothes. After she turned 12 years old and on more than twenty occasions, Castillo-Lopez forced T.S. to engage in penile-vaginal intercourse, anal intercourse, and fellatio with him. On one occasion, he "ejaculated on [her] bed" on a blanket that was later given to Deputy Jeremy Almond. RP (July 8, 2014) at 70. Analysts conducted DNA testing on the semen on the blanket and determined it was Castillo-Lopez's. Castillo-Lopez and Kelly both testified that they had sex on the blanket with each other.

After Kelly discovered sexually explicit text messages from Castillo-Lopez on T.S.'s phone, T.S. told her mother about the abuse. Thereafter, Kelly kicked Castillo-Lopez out of the house and called the police. T.S. provided the police with a statement. Castillo-Lopez left the United States for Mexico shortly after being kicked out of the house. Castillo-Lopez was arrested in San Diego after he tried to reenter the United States and was transported back to Lewis County to stand trial.

The jury found Castillo-Lopez guilty of five counts of rape of a child in the second degree. The jury made special findings on each of the five counts that T.S. and Castillo-Lopez were

3

members of the same household, Castillo-Lopez used his position of trust and confidence to commit the crime, the current offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time, and the crime was an aggravated domestic violence offense. The trial court sentenced Castillo-Lopez to a minimum of 500 months' confinement. Castillo-Lopez appeals.

## ANALYSIS[3]

### I. MOTIONS TO SUBSTITUTE COUNSEL AND MOTIONS FOR CONTINUANCES

Castillo-Lopez argues that the trial court denied him his counsel of choice and abused its discretion when it denied his motions to substitute counsel that were dependent upon the court granting his motions to continue the trial date. We disagree.

#### A. Standard of Review

When the defendant moves to replace his appointed counsel with retained counsel, but conditions the substitution on a continuance of the trial date, we review such decision for abuse of discretion. *State v. Hampton*, ___ Wn.2d ___, 361 P.3d 734, 740 (2015); *State v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010). In addition, the decision to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *Downing*, 151 Wn.2d at 272.

A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *Downing*, 151 Wn.2d at 272. "A decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported

---

[3] Subsequent to oral argument on this case, the Washington Supreme Court decided *State v. Hampton*, ___ Wn.2d ___, 361 P.3d 734 (2015), upon which we rely.

facts, adopts a view 'that no reasonable person would take,' . . . and arrives at a decision 'outside the range of acceptable choices.'" *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990); *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)); *Hampton*, 361 P.3d at 740-41. "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *Rohrich*, 149 Wn.2d at 654 (quoting *Rundquist*, 79 Wn. App. at 793).

Relevant to this case, the United States Supreme Court has explained that one of the basic limits on the right to counsel of choice is "a trial court's wide latitude in balancing the right to counsel of choice . . . against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). We have characterized that balancing by the trial court as "weigh[ing] the defendant's right to choose his counsel against the public's interest in the prompt and efficient administration of justice." *Aguirre*, 168 Wn.2d at 365. "The resolution of this balancing exercise falls squarely within the discretion of the trial court." *Hampton*, 361 P.3d at 737 (quoting *Aguirre*, 168 Wn.2d at 365).

B.  The Trial Court Did Not Abuse Its Discretion

In considering these types of motions, a trial court should consider all relevant information because "these situations are highly fact dependent and '[t]here are no mechanical tests' that can be used." *Hampton*, 361 P.3d at 740 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)). In providing guidance to the lower court, the Washington Supreme Court held that trial courts should consider all relevant information including the 11 factors described in the most recent version of LaFave's *Criminal Procedure* treatise:

(1) whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;
(2) the length of the continuance requested;
(3) whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;
(4) whether the court had granted previous continuances at the defendant's request;
(5) whether the continuance would seriously inconvenience the witnesses;
(6) whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;
(7) whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;
(8) whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;
(9) whether there was a "rational basis" for believing that the defendant was seeking to change counsel "primarily for the purpose of delay";
(10) whether the current counsel was prepared to go to trial;
(11) whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature.

*Hampton*, 361 P.3d at 740 (quoting 3 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 11.4(c), at 718-20 (3rd ed. 2007)). The court made clear that the trial court need not evaluate every factor in every case. *Hampton*, 361 P.3d at 740.

Here, the trial court did not abuse its discretion in denying the continuance on June 19, 2014. It considered relevant information and applied a number of the above-listed factors in making its decision.[4] Trial courts have discretion to manage their docket and deny continuances

---

[4] It is abundantly obvious that not all of these factors will be raised by the parties and only some may be relevant.

in order to do so.[5] Here, the trial court was willing to grant Castillo-Lopez's motion to substitute counsel but not the continuance. After the trial court inquired about substitute counsel's preparedness and availability, counsel repeatedly said he would not be available or ready for trial on the date set. Substitute counsel also indicated he did not want to substitute in for the appointed attorney unless the trial court also continued the trial. In ruling on this motion, the trial court considered RCW 10.46.085.[6] The charges against Castillo-Lopez fell within the scope of crimes identified in the statute. RCW 10.46.085 also provides the trial court with further tenable grounds for denying the continuance.

On July 3, 2014, Castillo-Lopez again moved to substitute his appointed counsel with retained counsel and obtain a continuance of the trial. The trial court did not abuse its discretion in denying these motions. It considered relevant information and some of the factors listed in *Hampton*. Castillo-Lopez's sole basis to continue the trial date was to allow the substitution of counsel. By this time, the DNA results were available to the parties. Trial was scheduled to begin

---

[5] Castillo-Lopez argues throughout his brief that the trial court's determination was based on an informal unwritten rule in Lewis County referenced during the second occurrence of the motions. The trial court stated, "[W]e have an informal policy have had it for years in Lewis County. We do not accept substitution of counsel that's dependent upon getting a continuance of the trial date. The Court runs the Court's calendar, not the attorneys." RP (July 3, 2014) at 3-4. Although Castillo-Lopez may have been confused by this statement, it does not support his argument that the trial court an abused its discretion. Trial courts are cautioned to not rely on unwritten policies or rules and to be aware of how they may affect parties' interpretation of rulings.

[6]     When a defendant is charged with a crime which constitutes a violation of [chapter 9A.44 RCW], and the alleged victim of the crime is a person under the age of eighteen years, neither the defendant nor the prosecuting attorney may agree to extend the originally scheduled trial date unless the court within its discretion finds that there are substantial and compelling reasons for a continuance of the trial date and that the benefit of the postponement outweighs the detriment to the victim.

RCW 10.46.085.

four days later. Castillo-Lopez never expressed dissatisfaction with his appointed counsel. Castillo-Lopez did not want a continuance. Again, the trial court made it clear it would grant the motion for substitution of counsel, but without a continuance. Thus, the denial of the motion for a continuance on July 3, 2014 was not an abuse of discretion because there were no substantial or compelling reasons to continue the trial date and the benefit to Castillo-Lopez was outweighed by the detriment of a continuance on the child victim.[7] The trial court did not abuse its discretion because the denial of the continuance was based on tenable grounds.

We affirm Castillo-Lopez's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, A.C.J.

Lee, J.

---

[7] RCW 10.46.085