# NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE ZURICH SERVICES
CORPORATION, as subrogee of Buca
Restaurants 2, Inc.,

     Appellant,

     v.

GENE MACE CONSTRUCTION, LLC,

     Respondent.

No. 83553-0-I

DIVISION ONE

PUBLISHED OPINION

BIRK, J. — This court has previously stated, "It sometimes happens that a party's litigation transgressions are so repeated, and so significant, that justice does not allow for them to be ignored." State v. I.N.A., 9 Wn. App. 2d 422, 424, 446 P.3d 175 (2019). We find this principle controlling here. The Zurich Services Corporation appeals an order, later reduced to judgment, dismissing its claims. The order was entered on a motion brought by Gene Mace Construction LLC (GMC), which was entitled "Defendant's Motion in Limine for Dismissal of Plaintiff's Complaint, or in the Alternative, Judgment as a Matter of Law." (Some capitalization omitted.) The motion was filed after the deadline for dispositive motions, was filed with two weeks remaining before trial, failed to meet the requirements of CR 12(b)(6), CR 12(c), CR 50, or CR 56, failed to comply with the local court rules, was unaccompanied by any request for the superior court to alter or waive the requirements of any rules, was presented in a manner leaving GMC's

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

opponent 48 hours in which to respond, and raised a new contention never before asserted in the action. Zurich objected in the superior court that the merits of GMC's motion were not properly before the court because of the motion's unexcused divergence from the rules of civil procedure and because Zurich was prejudiced. We agree, reverse, and remand.

I

A

According to a complaint filed by Zurich, in October 2015, Buca Restaurants 2 Inc. ostensibly entered into a construction agreement with GMC pursuant to which GMC would serve as a general contractor to perform construction work on Buca's restaurant. Buca maintained liability insurance with Zurich for that property.

On December 21, 2016, Cynthia Minardo, a patron of Buca, tripped and fell. The area of the fall was allegedly where the wood flooring of the bar transitioned to the concrete flooring of the dining room. Minardo alleged a half inch deviation in the flooring surfaces of the transition area caused her to trip and fall. Minardo sued Buca, and Zurich defended Buca.

Buca's attorney sent a tender letter to GMC dated March 28, 2019. In that letter, Buca referred GMC to the ostensibly written construction contract and invoked article VI, section 6.4, which Buca quoted as stating, " '[GMC] shall defend, indemnify, and hold harmless [Buca] from all and against any and all claims, liabilities, losses, damages, injuries, suits . . . that [Buca] may directly or indirectly sustain . . . as a result of . . . the Work itself.' " Buca's attorney asserted that under the contract, GMC was required to defend and indemnify Buca from any claims

2

arising from, resulting from, or connected with the renovation of Buca's restaurant. No response to Buca's tender letter appears in the record before this court.

Zurich settled the claim with Minardo for $250,000.00, and Minardo's complaint was dismissed with prejudice on May 20, 2019.

B

On December 2, 2020, Zurich filed this action against GMC for damages consisting of its settlement with Minardo and accompanying defense costs, together totaling over $400,000.00. Zurich alleged three claims: (1) breach of contract, (2) warranty, and (3) contractual indemnity. Zurich claimed GMC breached its contract with Buca when GMC performed work in a substandard manner and caused a half inch deviation to occur in the flooring between the bar and dining room. Next, Zurich claimed that under the construction agreement, GMC warranted the construction "would be free from defects and meet code requirements." Finally, Zurich claimed that pursuant to the construction agreement, GMC promised to indemnify, defend, and hold harmless Buca from claims of any person who suffered bodily injury or damage caused by GMC's fault and related to construction of the restaurant.

King County Superior Court issued a case scheduling order, setting deadlines for hearing dispositive motions and trial. The deadline for hearing dispositive pretrial motions was November 15, 2021. Trial was set to begin on November 29, 2021.

GMC filed its answer and affirmative defenses on January 19, 2021. In response to Zurich's indemnification claim and the alleged contents of the

construction agreement's indemnity clauses, GMC claimed "the alleged Construction Agreement and its content speak for themselves." GMC filed an amended answer and affirmative defenses on February 16, 2021. In GMC's amended answer, GMC removed the qualifier "alleged," stating "the Construction Agreement and its contents speak for themselves."

Also in its amended answer, GMC admitted "Buca Restaurants 2, Inc., entered into an agreement with GMC pursuant to which GMC would serve as general contractor to remodel an existing restaurant at the subject property." GMC stated, "It is admitted that GMC agreed to perform its construction services at the subject property in a good and workmanlike manner. These services involved some work on the establishment's bar flooring and on the transition between the bar flooring and the dining room area." In response to other paragraphs of the complaint, GMC repeatedly pleaded the construction agreement and its contents "speak for themselves." GMC asserted several affirmative defenses, including that some or all of Zurich's claims may be barred "by applicable statute of limitations." GMC did not identify a particular statutory limitation it asserted was applicable. GMC did not assert statute of frauds as an affirmative defense.

On October 29, 2021, 31 days before trial, GMC served a notice of intent to offer documents under ER 904. The notice listed "Plaintiff's Document Production," which was identified as including "GMC Construction Documents." GMC did not allude to the lack of a signed writing or mention the statute of frauds in this notice.

4

Also on October 29, 2021, the superior court held a pretrial conference and entered an order confirming that a five day virtual jury trial would commence on November 29, 2021. The order set the deadlines for motions in limine and responses to motions in limine as November 15, 2021 and November 17, 2021, respectively. The order provided, pursuant to COVID-19 protocols, motions in limine would be determined without oral argument.

On November 12, 2021, GMC served an objection to an ER 904 notice Zurich had served, contending the "[u]nsigned [c]ontract" was objectionable as hearsay under ER 802 and irrelevant under ER 402. This is the first indication in the record before this court that GMC was objecting to the construction agreement because it was unsigned or was attaching any significance to its being unsigned.

On November 15, 2021, two weeks before the trial was set to begin, the day motions in limine were due, and also the date originally set by the case scheduling order as the deadline for hearing dispositive motions, GMC filed a "Defendant's Motion in Limine for Dismissal of Plaintiff's Complaint, or in the Alternative, Judgment as a Matter of Law." (Some capitalization omitted.) The motion and its attachments totaled 144 pages. In the motion, GMC indicated Zurich had produced an ostensible construction agreement between Buca and GMC. Section 5.3 of that document stated, "Contractor agrees to indemnify, defend and hold harmless Owner or any other person or entity that suffers bodily injury or property damage caused by Contractor or any subcontractor or supplier of Contractor arising out of or related to this Agreement." The document was not signed by any party.

5

GMC argued, among other things, that Zurich had presented no evidence to support a conclusion a valid written contract existed between Buca and GMC and that Zurich's contract claims were time barred. GMC identified CR 12 and CR 50(a)(1) as the grounds for its motion. The motion relied on a statute of frauds defense, which had not been pleaded. For this defense, the motion argued there was not a contract "signed by the party to be charged therewith" as required under RCW 19.36.010, a fact that was not established on the pleadings. The motion relied on extrinsic evidence outside the pleadings, including the approved plan set for the construction work, a certificate of occupancy, declaration testimony from a representative of Buca, court records from the underlying action filed by Minardo, discovery from that action, Buca's tender letter, and what GMC called the "unsigned draft contract produced by Zurich in discovery."

In the motion, GMC asserted, "It is undisputed that there is no written contract signed by [GMC]," but GMC submitted no evidentiary support for that assertion. GMC included only a footnote directing the reader to "*See*" the unsigned document attached as an exhibit to a declaration by counsel and attributed by counsel to Zurich's discovery production. GMC asserted the work was "completed under an oral agreement" that was "based upon a long-standing relationship between [GMC] and John Thall of Buca." GMC provided no evidence supporting these representations by its counsel.

On the same day, GMC filed a notice of court date setting the motion for hearing "[w]ithout oral argument" on November 29, 2021, the same day trial was set to begin.

6

On November 16, 2021, the parties filed a joint statement of evidence, in which GMC objected to the construction agreement submitted by Zurich. GMC objected under ER 402, arguing the "unsigned draft contract does not accurately reflect the agreement." GMC also objected under ER 801 and 802, arguing "the unsigned draft contract is Zurich's hearsay not subject to any exception." The record before this court does not disclose any specific manner in which GMC contended the document failed to "accurately" reflect the "agreement" GMC conceded it and Buca made.

In compliance with the superior court's pretrial order, Zurich filed its response opposing GMC's motion in limine on November 17, 2021. Zurich addressed only the statute of limitations argument, writing, "For the purposes of this Opposition, [Zurich] assumes [GMC] is only arguing the statute of limitations issue, despite various potential arguments regarding the elements of [Zurich's] claims." Zurich urged the superior court to deny the motion among other reasons because GMC's dispositive motion was filed on the deadline for hearing dispositive motions under the case scheduling order. Zurich objected to GMC arguing "what is essentially a dispositive motion after the deadline for hearing dispositive motions" and, based on the "improper nature of [GMC's] Motion," urged the superior court to decline considering GMC's "[i]mproper [d]ispositive [m]otion."

On November 29, 2021, without oral argument, the superior court granted GMC's motion and dismissed Zurich's claims with prejudice. The superior court ruled there was "no valid contract" between Buca and GMC, and therefore, Zurich's claims failed as a matter of law. The superior court informed the parties by e-mail

7

that the jury trial was stricken and the prospective jurors were released. On December 10, 2021, the superior court entered judgment of dismissal with prejudice, now ruling there was "no valid written contract" between Buca and GMC. Zurich appeals.

II

A

GMC defends its motion on appeal as a CR 12(c) motion. The motion was not a motion in limine, as it did not seek to admit or exclude any evidence in advance of trial to protect a party from having to raise a prejudicial matter in the presence of the jury, which is the recognized purpose of such motions. See State v. Sullivan, 69 Wn. App. 167, 170-71, 847 P.2d 953 (1993). GMC does not attempt to defend the motion as one brought under CR 12(b)(6), and GMC appropriately concedes that the motion was unsustainable as a CR 50 motion, which may be made, "[i]f, during a trial by jury, a party has been fully heard with respect to an issue." CR 50(a)(1). Accordingly, we accept GMC's proffer of the motion as a CR 12(c) motion.

We review a CR 12(c) dismissal de novo. Davidson v. Glenny, 14 Wn. App. 2d 370, 375, 470 P.3d 549 (2020); Parker Ests. Homeowners Ass'n v. Pattison, 198 Wn. App. 16, 24, 391 P.3d 481 (2016). Like a CR 12(b)(6) motion, the purpose of a CR 12(c) motion is to "determine if a plaintiff can prove any set of facts that would justify relief." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). On a CR 12(c) motion, "[f]actual allegations contained in the complaint are accepted as true." Silver v. Rudeen Mgmt. Co., 197 Wn.2d 535, 542, 484 P.3d

8

1251 (2021). When applying the CR 12 standard, we grant the plaintiff the benefit of all reasonable inferences from the factual allegations in the complaint, as well as hypothetical facts consistent with the complaint. Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 830, 355 P.3d 1100 (2015).

Generally, when considering a CR 12(c) motion for judgment on the pleadings, a trial court may consider only the factual allegations contained in the complaint. Davidson, 14 Wn. App. 2d at 374. In deciding a CR 12(c) motion, the court may consider certain documents incorporated into the pleadings including an instrument such as an operative contract "the authenticity of which is not contested." P.E. Sys., 176 Wn.2d at 205. The court may consider documents whose contents are alleged but are not physically attached to the pleadings. Est. of McCartney v. Pierce County, 22 Wn. App. 2d 665, 677, 513 P.3d 119, review denied, 200 Wn.2d 1014, 519 P.3d 590 (2022). The court may also consider facts which may be judicially noticed. Id. When matter outside the pleadings is presented, if the court can nevertheless say that no matter what facts are proven within the context of the claim, the plaintiffs would not be entitled to relief, the motion remains one under CR 12. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 121, 744 P.2d 1032 (1987). In some circumstances, a CR 12 motion may provide an appropriate vehicle to determine a " 'core issue [] of law' " where the " 'basic operative facts are undisputed.' " Trujillo, 183 Wn.2d at 830 n.7 (quoting Trujillo v. Nw. Tr. Servs., Inc., 181 Wn. App. 484, 492, 326 P.2d 768 (2014)). This is so when " '[n]o purpose' " exists for allowing an opportunity to present evidence under CR 56 because " 'whatever might be proven would be

9

immaterial.' " Ortblad v. State, 85 Wn.2d 109, 111, 530 P.2d 635 (1975) (quoting Loger v. Wash. Timber Prods., Inc., 8 Wn. App. 921, 924, 509 P.2d 1009 (1973)).

Otherwise, CR 12(c) provides, "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Consistent with the above decisions, the rule does not require that the motion be converted to a summary judgment motion "when documents submitted to the trial court are not material to the question at hand." Parrilla v. King County, 138 Wn. App. 427, 432 n.2, 157 P.3d 879 (2007). "But exhibits that stretch the definition of a 'written instrument,' such as affidavits, are extrinsic evidence that may not be considered as part of the pleadings." P.E. Sys., 176 Wn.2d at 205. "[O]nce extrinsic evidence is admitted and considered, a motion on the pleadings should be converted to a motion of summary judgment." Id. at 206. In that event, all parties must be given reasonable opportunity to present all material made pertinent to such a motion by CR 56. CR 12(c).

1

The operative local rules required dispositive CR 12 motions to be briefed according to the standards for summary judgment motions. KING COUNTY SUPER. CT. LOCAL CIV. R. (KCLCR) 12(d) provides, "Motions under CR 12(b) and CR 12(c) shall be subject to the word limitations and scheduling requirements of CR 56, [KC]LCR 56 and [KC]LCR 7(b)(4)(B)." CR 56(c) states, "The motion and any supporting affidavits, memoranda of law, or other documentation shall be filed and served not later than 28 calendar days before the hearing." Following service of

the motion, the opposing party has until 11 calendar days before the hearing to submit opposition papers. Id. The same rule requires summary judgment motions to be "heard more than 14 calendar days before the date set for trial unless leave of court is granted to allow otherwise." Id. KCLCR 56(c)(1) states, "The court shall decide all summary judgment motions after oral argument, unless the parties waive argument." KCLCR 56(c)(2) states, "The deadlines for moving, opposing, and reply documents shall be as set forth in CR 56 and the Order Setting Case Schedule. In all other regards, parties shall file and deliver documents and the court shall set all hearings in conformance with [KC]LCR 7." KCLCR 7(b)(4)(B) provides, for dispositive motions, "The time and date for hearing shall be scheduled in advance by contacting the staff of the hearing judge." The superior court's case scheduling order set the deadline for hearing dispositive pretrial motions, based on KCLCR 56 and CR 56, as November 15, 2021. Pursuant to KCLCR 12, CR 12(c) motions fall under the purview of this deadline. Accordingly, motions brought under CR 12(c) in King County Superior Court must be scheduled for hearing in advance with the hearing judge, must be filed and served at least 28 calendar days before the hearing, must be heard more than 14 calendar days before trial in the absence of leave of court, and are normally heard with oral argument. GMC's motion violated all of these rules.

2

GMC contends this court should conclude the superior court impliedly waived the requirements of these rules, and conclude that such a waiver was within the superior court's discretion. For the reasons discussed in part III of this

11

opinion we decline to so conclude. We consider here GMC's alternative argument that if KCLCR 12 was not waived, this court should invalidate King County Superior Court's local rule concerning CR 12 motions as being inconsistent with the state civil rules. We decline this invitation also.

A superior court may "enact local rules 'not inconsistent' with the superior court civil rules." King County v. Williamson, 66 Wn. App. 10, 12, 830 P.2d 392 (1992) (quoting CR 83(a)). Local rules will be held to be "inconsistent" with the civil rules "only when they are 'so antithetical that it is impossible as a matter of law that they can both be effective.' " Id. (quoting Heaney v. Seattle Mun. Ct., 35 Wn. App. 150, 155, 665 P.2d 918 (1983)). In Williamson, the court invalidated a local rule requiring certain motions for reconsideration to be brought within five days, in light of CR 59(b)'s requirement that such motions be brought "not later than" 10 days after entry of the ruling requested to be reconsidered. 66 Wn. App. at 13-14. Answering the argument that the civil rules' terminology "not later than" merely established an outer boundary and a local rule could establish a shorter time period, we explained that local rules may not restrict a "valuable right" that is established by the civil rules. Id. at 13. In that case, the 10 day window of time in which to seek reconsideration was held to be such a right. Id.

Relying on Williamson, GMC first argues KCLCR 12 is inconsistent with CR 12 because that rule places no time requirements on the filing and service of CR 12 motions unique to CR 12. But GMC fails to point to any comparable "valuable right" that it enjoyed under the civil rules and that KCLCR 12 restricted. CR 6(d) provides that written motions must be served "not later than 5 days before the time

12

specified for the hearing." In other words, the civil rules provide a minimum level of required notice for written motions. But they do not give any party an expectation that they are entitled to have any written motion heard on only five days' notice, because CR 6(d) makes this minimum requirement subject to exception when "a different period is fixed by these rules or by order of the court." Id. GMC fails to show that by requiring parties to give 28 days' notice for CR 12 motions KCLCR 12 deprives parties of any right to which they are entitled under the civil rules. Further, GMC ignores that the superior court here additionally established the scheduling requirements for dispositive motions in its case scheduling order, and CR 6 expressly permitted the court to adopt alternate time periods "by order of the court." CR 6(d).

GMC next argues KCLCR 12 is inconsistent with CR 12(h)(2), which states "A defense of failure to state a claim upon which relief can be granted" may be made at several procedural junctures, specifically, "in any pleading permitted or ordered under rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." This rule has been held to mean a party does not waive a defense of failure to state a claim upon which relief can be granted if the party does not assert the defense in a preliminary motion or a responsive pleading. Foothills Dev. Co. v. Clark County Bd. of County Comm'rs, 46 Wn. App. 369, 377-78, 730 P.2d 1369 (1986). But GMC cites no authority holding CR 12(h)(2) otherwise governs the procedural requirements under which a party must present either a pleading, or a motion for judgment on the pleadings, or a trial motion setting forth this defense. We hold KCLCR 12 is not inconsistent with the civil rules and is valid

13

insofar as it requires written pretrial motions under CR 12(c) to be brought in accordance with King County Superior Court's requirements for dispositive motions. GMC's motion violated KCLCR 12, was not otherwise authorized by CR 12(h)(2), and, as discussed below, the violation was prejudicial.

### 3

GMC's motion also was improper because when considered as a CR 12(c) motion, it was one required to be converted to a summary judgment motion subject to CR 56. GMC's motion depends on a factual predicate: there is no writing signed by GMC. This fact is not established on the pleadings. Zurich's complaint alleges the existence of a construction agreement between Buca and GMC. It references and quotes in writing specific clauses that imposed liability on GMC, such as paragraphs 5.3 and 6.4, in which GMC allegedly promised to indemnify Buca from claims that arose from GMC's fault related to the construction of the restaurant. Zurich's complaint did not explicitly allege the construction agreement was oral or written, but did reference specific clauses, such as "paragraphs 5.3 and 6.4," which suggests the construction agreement was written.

GMC's answer also did not address whether the construction agreement was oral or written, but admitted the existence of an agreement and affirmatively pleaded "the terms and conditions of the Construction Agreement speak for themselves." GMC suggests that we should view its answer as indicating only the unsigned "Construction Agreement" contained terms that would "speak for themselves," as opposed to the agreement between GMC and Buca whose existence GMC expressly admitted. Even if we were inclined to parse GMC's

14

amended answer so finely, the amended answer does not, together with the complaint, establish as fact that there was no signed writing. It also does not provide notice that GMC intended to rely on the lack of a signed writing as a defense. Zurich pleaded the existence of a "Construction Agreement," to which GMC answered, "[I]t is admitted that Buca Restaurants 2, Inc., entered into an agreement with GMC pursuant to which GMC would serve as general contractor to remodel an existing restaurant." Zurich alleged terms it averred were contained in the same construction agreement. GMC answered these allegations without any qualification it believed it was now referring to a different set of terms. Denials—such as a denial of the alleged contents of the agreement—"shall fairly meet the substance of the averments denied." CR 8(b). The allegations of the pleadings—to say nothing of the inferences and hypothetical facts they would support—fail to establish as a proposition of fact that GMC and Buca never entered into a signed writing.

As a result, the only way to establish the factual predicate of lack of a writing signed by GMC to support a statute of frauds defense and related statute of limitations defense for oral contracts was through an evidentiary showing. From among the dispositive motions available in advance of trial, this is properly done under CR 56. The only version of any construction agreement in the record is unsigned by any party. It is not authenticated by any competent witness, but is identified by GMC's trial counsel only as being a true and correct copy of a document Zurich produced in discovery. Citing to that construction agreement, GMC argued in its motion it is undisputed there is not a written contract signed by

15

GMC, and, without any evidentiary support, the remodel work was completed under an oral agreement between Buca and GMC. These assertions of fact were both unsupported by the materials GMC submitted and outside the scope of the pleadings.

We reject GMC's alternative arguments that the superior court did not need to look outside the pleadings, despite its orders indicating it did, and that the facts supporting the motion were sufficiently "undisputed" to be considered despite their not appearing from the pleadings. The superior court's order granting GMC's motion stated the ruling was made with "the Court having considered the Motion and supporting documents and the following additional documents: Plaintiff's Response, Defendant's Reply; and the court otherwise being fully advised in the premises." It appears Zurich had relied on the unsigned construction agreement, but nowhere in its answer or amended answer did GMC plead any defense suggesting that Zurich could not do so or that Buca and GMC entered into only an oral contract. We cannot say the superior court did not need to look beyond the pleadings to consider the motion, nor that the record established sufficient undisputed facts to support a pleadings resolution.

Beyond these considerations, other authority indicates that a CR 12 motion may properly be converted to a summary judgment motion when the moving party relies on a defense not asserted in the pleadings. Freedom Found. v. Teamsters Loc. 117 Segregated Fund, 197 Wn.2d 116, 142-43, 480 P.3d 1119 (2021) ("The affirmative defense Teamsters Local 117 asserted in its CR 12(c) motion was outside the pleadings, so the superior court should have 'treated [that motion] as

16

one for summary judgment.' " (alteration in original) (quoting CR 12(c)); Foisy v. Conroy, 101 Wn. App. 36, 38, 4 P.3d 140 (2000) ("Because the court was asked to consider documents other than the pleadings, [the judge] treated the CR 12(b)(6) motion as a motion for summary judgment."). In its motion, GMC asserted the statute of frauds and statute of limitation for oral contracts barred Zurich's claims. While the statute of limitations was pleaded in GMC's amended answer, the statute of frauds was not.

In asserting contentions not set forth in the pleadings, relying on evidentiary facts not established on the pleadings, and in relying on extrinsic evidence, GMC's motion was a summary judgment motion improperly characterized as a different sort of motion to avoid the requirements of CR 56. The motion was required to be disposed of consistent with CR 56, and all parties were required to be given a reasonable opportunity to present all material made pertinent to a summary judgment motion. CR 12(c). This did not occur. When a CR 12 motion is converted to a CR 56 motion, the court does not necessarily need to newly afford parties the precise time periods for response set forth in CR 56. Foisy, 101 Wn. App. at 40. But as discussed above, King County Superior Court local rules already validly imposed those time requirements on GMC's CR 12(c) motion. KCLCR 12(d); 56(c)(2). In the absence of leave of court, CR 56(c) further required that a summary judgment motion be heard more than 14 calendar days before trial. The purposes of a cutoff on dispositive motions are to require parties believing they have dispositive contentions that can be resolved by motion to present them in a timely manner, and to allow parties and the court a period of time to prepare

17

for trial free of the burden of dispositive motion practice. Leave of court was never obtained to hear GMC's motion within 14 days of trial, and as a result its motion violated CR 56.

Analysis of the rules and GMC's concessions together demonstrate GMC's motion as presented did not comply with the requirements for a motion in limine, CR 12(b)(6), CR 12(c), CR 50, or CR 56, or the corresponding local rules.

B

To prevail on an appeal challenging a trial court's deviation from normal time limits, the appellant must demonstrate it was prejudiced by the trial court's actions. State ex rel. Citizens Against Tolls v. Murphy, 151 Wn.2d 226, 236, 88 P.3d 375 (2004) (CAT). "To establish prejudice, the party making the challenge to an order shortening time must show a lack of actual notice, a lack of time to prepare for the motion, and no opportunity to submit case authority or provide countervailing oral argument." Id. at 236-37.

1

The parties dispute the period of time Zurich had in which to respond to GMC's motion. Zurich argues it had two days in which to respond, because GMC designated the motion as a motion in limine and the pretrial order required responses to motions in limine to be filed within two days. GMC argues notwithstanding the title of the motion, it noted the motion as a nine day motion under the local rules, which gave Zurich seven days in which to respond.

We hold GMC to its designation of the motion as a motion in limine, which left only a two day response period. We reject its argument on appeal that it was

entitled to name the motion as one sort of motion, and simultaneously note the motion as another sort of motion, such that Zurich actually had more time than Zurich realized in which to respond. First, for the reasons noted above, the motion would have been improper even as a nine day motion. Second, GMC unilaterally created the ambiguity about the type of motion it was filing, and we will not fault Zurich for following one of GMC's signals as opposed to the other. Zurich acted reasonably in concluding it had two days in which to respond to the motion in limine.

2

Zurich did not receive a fair opportunity to respond to the motion. Zurich made a sufficient objection to the timing of the motion and the assertion of new issues without adequate opportunity for response. In its response, Zurich objected to GMC's improper dispositive motion. GMC's statute of frauds defense was new and a surprise. We cannot conclude that Zurich was put on notice of the defense from GMC's ER 904 objection, but even this document was filed only three days before the motion. The statute of frauds defense arguably contradicted GMC's amended answer, in which GMC stated the terms of the construction agreement would "speak for themselves," a characteristic that is potentially true of written agreements, but generally not oral agreements. Charging Zurich to respond to a dispositive motion on a new contention, while also preparing for a trial set to start two weeks later, is not reasonable.

This leaves us in doubt about the propriety of reviewing the merits of GMC's defenses based on the record we have, which is the product of a response period

19

in the superior court that Zurich correctly objected was unfairly curtailed. On appeal, GMC puts most weight on its argument that, regardless of its variance from the rules of procedure, its defenses based on the statute of frauds and the statute of limitations for oral contracts are sufficiently compelling as a matter of law that there would be no point in remanding to have those defenses decided according to an appropriate procedure. We are sufficiently concerned by the potential we lack an appropriate record that we decline to comment on the merit of these defenses. We note only that Zurich appears to raise colorable arguments on the applicability of the statute of frauds and the statute of limitations applicable to its claims, such that we believe it should have the opportunity to present those arguments free of the procedural deficiencies that GMC unilaterally created. Washington recognizes limitations on a statute of frauds defense in certain situations, while also limiting the extent to which agreements may nevertheless be enforced pursuant to such limitations. Rutcosky v. Tracy, 89 Wn.2d 606, 611, 574 P.2d 382 (1978); Becker v. Lagerquist Bros., Inc., 55 Wn.2d 425, 435-36, 348 P.2d 423 (1960); Costco Wholesale Corp. v. World Wide Licensing Corp., 78 Wn. App. 637, 643-44, 898 P.2d 347 (1995). We do not address the merits of the statute of frauds or statute of limitations defenses, and we express no opinion on the comparability of the facts here—which are not robustly supported in our record— to this line of decisions.

Because GMC's unexcused violations prejudiced Zurich, we conclude that Zurich is entitled to reversal of the judgment.

20

No. 83553-0-I/21

III

GMC argues on appeal the superior court had discretion to waive its rules, arguing we should assume it did so here to facilitate GMC's new legal defense to Zurich's claims.  In GMC's words, it argues the superior court had the discretion to "brush aside" GMC's procedural violations.  We do not agree trial courts have the level of leeway GMC claims.

A

Trial courts have discretion to control their dockets.  See State v. Castillo-Lopez, 192 Wn. App. 741, 748, 370 P.3d 589 (2016).  However, GMC's authorities establish the discretion to waive applicable rules is dependent on affording reasonable protection to the rights of other affected parties.  GMC ignores this limitation on the trial court's otherwise wide latitude.

GMC relies on Ashley v. Superior Court for Pierce County, 83 Wn.2d 630, 38-40, 521 P.2d 711 (1974), in which a four justice lead opinion relied on the court's power to waive its rules to direct that instead of requiring service by publication on a nonresident spouse in a divorce case, it would permit alternate service at lower cost through United States mail.  The indigent claimant sought a divorce from her spouse who resided out of state.  Id. at 631, 633.  The claimant relied on United States Supreme Court case law holding divorce could not be denied due to indigency under the due process clause.  Id. at 631.  The court crafted a detailed procedure to be followed to effect substitute service by mail.  Id. at 638-40.  In waiving the rule to aid the Washington spouse seeking divorce, the court recognized it was not entitled to "waive" the nonresident spouse's "constitutional

21

right to notice." Id. at 636-37. The court's approval of an alternate procedure was based on its view it could "safely be assumed" notice would reach the nonresident spouse through the alternate procedure, and the alternate procedure protected the nonresident spouse's rights. Id. at 638. Five justices, a majority, concurred in the result only, but did not endorse the broad proposition GMC asserts in this case that the court can waive rules generally. Id. at 641-42.

The Ashley plurality supports the proposition a court has discretion to waive court rules when appropriate to protect a party's established right, if the court ensures the waiver can be implemented in a manner that will adequately protect the rights of other parties who are affected. GMC's citation to Ashley to support the superior court's action here fails on both fronts. First, GMC did not have a right to present a dispositive motion at the time and on the schedule it employed, let alone a right to do so that we can analogize to the claimant's constitutional right in Ashley to obtain a divorce unimpeded by indigency. Second, the court in Ashley took great pains to ensure the other party would not be unfairly prejudiced by the departure from the required procedure and indeed would be at least equally if not better protected. In contrast here, not only is there nothing in the record supporting the conclusion the superior court explicitly contemplated waiving any rules, there is similarly nothing supporting the conclusion the court recognized, let alone assuaged, the hardship GMC's procedural violations imposed upon its adversary.

B

A further complication in this case is that GMC did not ask the superior court to waive any rules, and there is no record the court did so. GMC asks that we

22

presume the superior court waived virtually all of the rules applicable to dispositive motions for GMC's benefit and further conclude its doing so was within its discretion. GMC's cases contemplating "implied waiver" do not support that outcome here.

In Foster v. Carter, a defendant joined several third party defendants sharing a common defense to the third party claim. 49 Wn. App. 340, 342, 742 P.2d 1257 (1987). They alerted the party who had joined them of their intention to seek summary judgment. Id. At the joining party's request, all but one of the third party defendants withheld filing for a period of time to allow the joining party to attempt to obtain dismissal of the original plaintiff's claim. Id. One of the third party defendants did not delay, however, but filed a summary judgment motion that was rejected on procedural grounds. Id. When the remaining third party defendants sought summary judgment as they had indicated they would, the party who had joined them objected that they were improperly making a reapplication of the same motion. Id. We concluded the superior court had inherent power to waive its rules and we would presume it had "sufficient cause to waive" its rule against reapplication—provided, we cautioned, the waiver was "absent evidence of an injustice." Id. at 343. We concluded there was no injustice, because the moving parties had given much more advance notice of their planned motion than the rules required. Id.

In Snyder v. State, 19 Wn. App. 631, 637, 577 P.2d 160 (1978), the court was presented with the question "whether the trial court violated its Local Rule 7 by allowing a summary judgment motion to be presented and considered by two

23

different Superior Court judges." This court ultimately dismissed review, concluding the matter did not involve an appealable final judgment, therefore contemplating further proceedings in the trial court. Id. While Snyder recognized this court's authority to presume a trial court waived its own local rules for sufficient cause, it conditioned this authority on there being "good reason" for the trial court to do so, and the record not showing the decision was "clearly wrong" or that "an injustice has been done." Id. at 637.

Like Ashley, Foster and Snyder require that any waiver, and particularly a waiver implied by a reviewing court, be accompanied by a record affirmatively showing the absence of prejudice to other affected parties. In Foster, we recognized the trial court's discretionary authority in the application of its rules where a party sought to bar the court from reaching the merits of a motion that was appropriately brought and for which the moving parties had given greater notice than was required. Here, by contrast, GMC demands the court recognize a waiver so it can bring a dispositive motion in violation of the applicable rules, without the required notice, asserting a new contention, and without consideration of the impact on the opposing party. GMC's authorities do not support its conduct.

That GMC depends on this court inferring an implied waiver that was neither requested nor explicitly granted distinguishes cases in which trial courts granted explicit waivers after considering the affected parties' circumstances. In CAT, the court held the trial court did not abuse its discretion in allowing an expedited schedule for summary judgment. 151 Wn.2d at 240. This was based on an express motion to shorten time on which all parties were heard. Id. at 235. The

trial court ordered the moving party to file its motion for summary judgment within two days, the responding party to file its response within six days afterwards, and oral argument to be set two days after the response. Id. The CAT court noted that a trial court wields discretion when ruling on a motion to shorten time, and a deviation from the normal time limits is permitted as long as there is ample notice and time to prepare. Id. at 236. There, the affected party had had two to three months' notice of the anticipated motion. Id. at 238. As a result, it did not lack an opportunity to prepare for the motion, to present argument, and to submit case authority. Id. at 239.

We have required parties to seek leave of court when they wish to rely on late-submitted materials to oppose dispositive motions. In that setting, whether to accept untimely materials lies within the trial court's discretion. O'Neill v. Farmers Ins. Co. of Wash., 124 Wn. App. 516, 521-22, 125 P.3d 134 (2004). CR 6(b) permits courts to enlarge the time in which to submit materials opposing a dispositive motion. But we have held that once a deadline has passed, courts can accept late filings only if a motion is filed explaining why the failure to act constituted excusable neglect. Colo. Structures, Inc. v. Blue Mountain Plaza, LLC, 159 Wn. App. 654, 660, 246 P.3d 835 (2011) (citing CR 6(b)(2)). As this court has summarized Washington law, "[n]o Washington case obligates the superior court to accept summary judgment affidavits after the hearing or a memorandum decision without the proponent complying with some test." Boyer v. Morimoto, 10 Wn. App. 2d 506, 537, 449 P.3d 285 (2019). "All Washington decisions involve the nonmoving party initiating some action for the court to review the affidavit other

25

than simply filing the affidavit." Id. This logically implies when a party wishes to present a dispositive motion in a manner prohibited by the rules, that party must carry the burden of obtaining leave of court to do so. GMC's merely filing its motion contrary to the rules was not sufficient to invoke leave of court to do so.

Ashley, Foster, and Snyder all contemplate, and we hold, waiver of the governing civil and local rules of procedure must be conditioned on adequate protection of an opposing party's rights. Here that required affording Zurich a reasonable time in which to respond to the motion consistent with CR 12 and CR 56. We further hold a reviewing court may imply an otherwise unstated waiver only in circumstances where it appears affirmatively from the record no affected party was prejudiced. GMC's actions deprived Zurich of the opportunity it was intended to have under the rules of a fair period in which to prepare a response to GMC's dispositive motion. Accordingly, a waiver was not appropriate, and we would not find one implied on this record.

IV

We reverse and remand. On remand, GMC may invoke the appropriate procedures under the civil and local rules to present its defenses for a determination on the merits based on a proper record.

_Birk, J._

WE CONCUR:

_Chung, J._          _Dwyer, J._

26